# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE MCSPIRIT, individually and on behalf of all others similarly situated,<br><br>      **Plaintiff,**<br><br>  -against-<br><br>COVENTBRIDGE (USA) INC.,<br><br>      **Defendant.** | **No. 20 Civ. 05754** |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiff Jane McSpirit ("Named Plaintiff") individually and on behalf of the Class (as defined below; Named Plaintiff and the Class, together, are the "Plaintiffs") and CoventBridge (USA), Inc. ("CoventBridge" or "Defendant" and together with the Plaintiffs, the "Parties").

**RECITALS AND BACKGROUND**

WHEREAS, on July 24, 2019, Named Plaintiff sent Defendant a demand letter with respect to potential claims against Defendant under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), for the alleged failure to pay agreed upon wages and overtime compensation to Plaintiff and Putative Class Members (the "Claims");

WHEREAS, Prior to the Litigation, the Parties and their counsel participated in a full-day mediation session on March 16, 2020, which was conducted by Marlene Quintana, an experienced Florida mediator, yet were unable to come to a settlement;

WHEREAS, on July 24, 2020, Named Plaintiff filed a Complaint in the Southern District of New York, styled *McSpirit v. CoventBridge (USA), Inc.*, Case No.: 20-cv-5754 (the "Litigation");

WHEREAS, the Parties have engaged in and completed extensive informal discovery in connection with the potential settlement of this matter;

WHEREAS, Plaintiffs and Defendant, through their counsel, have also participated in extensive arms-length negotiations in an effort to settle the disputes underlying the Litigation;

WHEREAS, after continued negotiations and discussions, on February 24, 2021, the Parties engaged in a second full-day mediation session, which was conducted by Ruth Raisfeld,

an experienced and highly-regarded mediator who has successfully negotiated settlements in similar wage and hour class and collective actions;

WHEREAS, solely for the purpose of settling this Litigation, and without admitting any wrongdoing or liability or the appropriateness of class certification for any purpose other than settlement, Defendant has agreed, for settlement purposes only, to class certification under Rule 23 of the Federal Rules of Civil Procedure ("FRCP");

WHEREAS, Defendant has denied and continues to deny all of the material allegations made by Named Plaintiff in the Litigation and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, solely for the purpose of settling this Litigation, and without admitting any wrongdoing or liability or the appropriateness of class certification for any purpose other than settlement, Defendant has agreed to the dissemination of a Notice of Settlement, pursuant to Rule 23 of the FRCP to all Class Members (as defined below);

WHEREAS, Named Plaintiff is entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance; agrees that the Agreement is fair and reasonable; that she has consulted with counsel of her choosing prior to signing this Agreement; that she has been given a reasonable amount of time to consider this Agreement; and that, absent this Agreement, she would not otherwise be entitled to the consideration specified in this Agreement.

WHEREAS, the purpose of this Agreement is to settle fully and finally all FLSA and State Law Wage and Hour Claims (as such terms are defined below), between or among Named Plaintiff, Class Members, and Defendant, including but not limited to all claims asserted in the Litigation in order to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Class Counsel (as defined below) analyzed and evaluated the merits of the claims made against Defendant and the impact of this Agreement on Named Plaintiff and Class Members. Based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Class Counsel (as defined below) is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interests of Plaintiff and Class Members.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1**     **"Action" or "Litigation."** The Action or Litigation shall mean the civil action filed in the Southern District of New York, captioned *McSpirit v. CoventBridge (USA), Inc*, Case No.: 20-cv-5754.

**1.2**     **"Administrator" or "Claims Administrator."** The Administrator or Claims Administrator will be A.B. Data.

**1.3**     **"Agreement."** Agreement means this Settlement Agreement and Release.

**1.4**     **"Check Void Date."** Check Void Date means the date that is precisely 120 days from the date the Administrator mails Settlement Checks (as defined below). All Settlement Checks shall be void as of the Check Void Date.

**1.5**     **"Class" or "Class Member(s)."** Class or Class Members shall be defined as: all current and former surveillance investigators and claims investigators who (i)  worked at CoventBridge in the State of New York during the Relevant Time Period (as defined below) and (ii) do not opt out of the Litigation or this settlement pursuant to Section 3.9 below. The Class Members acknowledge that they agree to settle and release all State Law Wage and Hour Claims and FLSA claims they may have against Defendant and/or Releasees (as defined below).  The number of Class Members is approximately 220 individuals.

**1.6**     **"Class Counsel" or "Plaintiff's Counsel."** Class Counsel or Plaintiff's Counsel shall mean Brian S. Schaffer and Dana M. Cimera of Fitapelli & Schaffer, LLP, which is located at 28 Liberty Street, 30th Floor, New York, NY 10005.

**1.7**     **"Class Member List."** The Class Member List shall mean a list of all Class Members, identified by: (i) name; (ii) last known address; (iii) dates of employment, (iv) hours worked during the Relevant Period; and (v) social security number; contained in a Microsoft Excel spreadsheet (or another computer readable format, if unable to produce such information in an Microsoft Excel document) that Defendant shall provide to Plaintiff's Counsel and the Claims Administrator. However, social security numbers shall only be provided to the Claims Administrator.  Defendant's records shall control with respect to eligibility for participation in the settlement.  Class Counsel agrees not to use this information for any purpose other than responding to Class Member inquiries in connection with the settlement.

**1.8**     **"Court."** The Court shall mean the United States District Court for the Southern District of New York.

**1.9**     **"Days."** Unless otherwise specified, days shall mean calendar days.

**1.10**    **"Defendant."** Defendant is CoventBridge (USA), Inc.

**1.11**    **"Defense Counsel" or "Defendant's Counsel."** Defense Counsel or Defendant's Counsel shall be Patrick Bannon and Gena Usenheimer, Seyfarth Shaw LLP, 610 Eighth Avenue, New York, 10018.

68910315v.2

**1.12**   **"Fairness Hearing."** The Fairness Hearing shall mean the hearing before the Court relating to the Motion for Final Approval, unless otherwise scheduled by the Court without the filing of a motion.

**1.13**   **"Final Approval Order."** The Final Approval Order shall mean the order entered by the Court after the Fairness Hearing approving the terms and conditions of this Agreement, and dismissing the Litigation with prejudice.

**1.14**   **"FLSA Claims."** The FLSA Claims shall mean (a) any and all claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA") (b) any and all other claims that were or could have been asserted in the Litigation, whether known or unknown, under any federal law relating to wages, compensation or hours of work (including but not limited to any and all claims for overtime pay or minimum wage); and (c) any and all damages arising from any of the claims described in (a) or (b) (including but not limited to claims for wages, monetary damages, liquidated damages, penalties, punitive damages, interest, attorneys' fees and costs); provided however that the FLSA Claims shall not include claims of retaliation for participating in this settlement or in the Litigation.

**1.15**   **"Motion for Final Approval."** The Motion for Final Approval shall mean the Plaintiff's anticipated motion, with supporting documents and materials, for the Court's final approval of the settlement.

**1.16**   **"Named Plaintiff."** Named Plaintiff shall mean Jane McSpirit.

**1.17**   **"Net Settlement Fund."** Net Settlement Fund means the remainder of the Settlement Fund after deductions for Court-approved attorneys' fees and expenses, settlement administration fees and expenses, enhancement awards, and all other Court-approved expenses or disbursements.

**1.18**   **"Notice" or "Notices."** Notice or Notices shall mean the Court–approved Notice of Proposed Settlement including notice of an opportunity to opt-out and/or object to the proposed settlement.

**1.19**   **"Objector."** An Objector shall mean any Class Member who properly files an objection to this Agreement; the term does not include any individual who opts-out of this Agreement.

**1.20**   **"Opt-out Statement."** An Opt-out Statement is a written signed statement by a Class Member that the Class Member has decided to opt-out of the settlement and not be included in this Agreement. Any Class Member who does not submit an Opt-out Statement waives and releases all State Law Wage and Hour Claims, even if he or she does not cash his or her settlement check(s) in this matter. Only Class Members who endorse their settlement checks will waive and release their FLSA Claims as well.  Class Members who submit an Opt-out Statement retain any FLSA Claims and/or State Law Wage and Hour Claims.

**1.21**   **"Parties."** The Parties shall refer to Named Plaintiff, the Class, the Class Membersand Defendant together.

**1.22    "Plaintiffs."**  Plaintiffs shall mean Named Plaintiff Jane McSpirit and the Class and Class Members.

**1.23    "Preliminary Approval Order."** The Preliminary Approval Order shall mean the Order entered by the Court preliminarily approving the terms and conditions of the Agreement and certifying the Class for settlement purposes only.

**1.24    "Relevant Period" or "Relevant Time Period."** The Relevant Period or Relevant Time Period means September 16, 2013 through January 6, 2019.

**1.25    "Reserve Fund."** The Reserve Fund shall mean $10,000.00 set aside from the Settlement Fund to cover errors and omissions in the calculation of Class Members' individual shares of the settlement, including, but not limited to: (i) claims from individuals claiming to be Class Members, but not identified as such by Defendant; and (ii) any errors regarding Class Members' hours worked.  Prior to the distribution, any amount remaining of the $10,000.00 Reserve Fund will be reallocated pro rata among Class Members.

**1.26    "Settlement Account."** The Settlement Account shall mean a qualified settlement fund established by the Administrator, pursuant to this Agreement, at a bank reasonably acceptable to the Parties. The Settlement Account will be controlled by the Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval.

**1.27    "Settlement Checks."** The Settlement Checks shall mean the checks issued to Class Members from the Settlement Account by the Administrator as calculated by the Administrator in accordance with this Agreement.

**1.28    "Settlement Fund."** The Settlement Fund shall mean the maximum aggregate amount that can be paid by Defendant pursuant to this Agreement and includes any settlement amounts, enhancement award, reserve fund, settlement administration costs, and professional fees, costs, and expenses. Under no circumstances shall the Settlement Fund exceed One Million Two Hundred Thousand Dollars and Zero Cents ($1,200,000.00), excluding employer's share of payroll taxes.  Other than any employer-side payroll taxes, Defendant shall have no liabilities in excess of the Settlement Fund.

**1.29    "State Law Wage and Hour Claims."** The State Law Wage and Hour Claims shall mean (a) any and all claims under New York State law, any municipal or local law in New York State or any analogous state or local law (including but not limited to the New York Labor Law, New York Order for Miscellaneous Industries and Occupations, other similar laws and/or wage orders, and state common law), that relate to or arise directly or indirectly from an individual's wages, compensation or hours of work (including, but not limited to, any and all claims for unpaid wages, penalties, overtime pay, minimum wage, failure to maintain, provide, post, furnish or issue any type of records, notices or statements relating to wages, compensation or hours of work); (b) all other claims that were or could have been asserted in the Litigation, whether known or unknown, under any state and/or local wage and hour laws (including but not limited to the New York Labor Law, New York Order for Miscellaneous Industries and Occupations, and the New York Wage Theft Prevention Act); and (c) any and all claims for any and all damages arising from any of the claims described in (a) or (b) (including but not limited to claims for compensatory damages,

liquidated damages, penalties, consequential damages, punitive damages, interest, attorneys' fees and costs); provided however that The State Law Wage and Hour Claims shall not include claims of retaliation for participating in this settlement or in the Litigation.

## 2.      INITIAL PROCEDURAL ISSUES

**2.1      Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms.

**2.2      Retention of the Administrator.** Plaintiff's counsel shall engage the Administrator to mail Notices and administer the settlement.

**2.3      Responsibilities of the Administrator.** The Administrator shall be responsible for:

(A)      preparing, printing and disseminating the Notice to the Class and any other notices required by this Agreement or the Court;

(B)      copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party or Class Member;

(C)      promptly furnishing to counsel for the Parties copies of any Opt-out Statements, objections or other written or electronic communications from the Class that the Administrator receives;

(D)      keeping track of all Opt-out Statements and objections or other written or electronic communications from the Class which the Administrator receives, including but not limited to maintaining the original envelope for any communication received by mail or other hard-copy delivery;

(E)      mailing all required tax forms to Named Plaintiff, to Class Members, and to Class Counsel as provided herein;

(F)      setting up a Settlement Account to be used for the distribution of all Settlement Checks to Class Members, Plaintiff's Counsel, the Claims Administrator and to the Named Plaintiff;

(G)      calculating the amount of the Named Plaintiff's and each Class Member's Settlement Check;

(H)      calculating the employer-side payroll taxes required pursuant to the settlement;

(I)      calculating, preparing, and mailing appropriate tax forms for Defendant and for each Class Member, and for Wage Payments, and calculating and paying federal, state, and local taxes and the employee share of FICA taxes for all Class Members;

(J)      preparing and mailing the Settlement Checks to Class Members and Named Plaintiff, as well as Enhancement Award(s);

(K)    ascertaining current address and addressee information for each Notice returned as undeliverable and remailing each such Notice to the correct address;

(L)    responding to inquiries by the Class regarding procedures for filing objections and Opt-out Statements;

(M)    referring to Plaintiff's Counsel all inquiries by the Class regarding matters not within the Administrator's duties specified herein;

(N)    responding to inquiries from Class Counsel and Defense Counsel consistent with the Administrator's duties specified herein;

(O)    promptly apprising Class Counsel and Defense Counsel of the activities of the Administrator;

(P)    maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications and attempted written or electronic communications with the Class;

(Q)    confirming in writing to Plaintiff's Counsel and Defense Counsel its completion of the administration of the settlement;

(R)    timely responding to communications from the Parties or their counsel;

(S)    treating Class Member List Information (defined below) as strictly confidential and not using it for any purpose other than to carry out the Administrator's responsibilities with respect to the settlement; and

(T)    such other tasks the Parties mutually agree.

In addition, no later than fifteen (15) days prior to the Fairness Hearing, the Administrator shall certify and provide jointly to Plaintiff's Counsel and to Defense Counsel: (a) a list of all Class Members with their final estimated awards; (b) a list of all Class Members who filed timely objections; and (c) a list of all Class Members who requested to opt-out of the settlement at any time during the opt-out period and their estimated award(s). The Administrator shall also provide Plaintiff's Counsel and Defense Counsel with an updated address list for the Class. Throughout the period of claims administration, the Administrator will provide weekly reports to the Parties regarding the status of the mailing of the Notices to the Class, the claims administration process, and distribution of the Settlement Checks or any other aspect of the claims administration process.

**2.4**    **Access to the Administrator.** The Parties will have equal access to the Administrator throughout the claims administration period. Plaintiff's Counsel and Defense Counsel agree to provide the Administrator with all accurate information available and necessary to reasonably assist the Administrator in performing its duties.

**2.6**   **Approval of the Preliminary Approval Order.**

(A)   Within ten (10) business days of the full execution of this Settlement Agreement, Plaintiff's Counsel shall file an unopposed motion for Preliminary Settlement Approval ("Preliminary Approval Motion") which shall include: (i) the proposed Notice of Proposed Class Action Settlement; (ii) a proposed Preliminary Approval Order; (iii) an executed version of this Agreement; and (iv) the necessary documents, memoranda, affidavits, and exhibits for the purposes of certifying a Class under FRCP Rule 23 for settlement purposes only, and preliminarily approving the Agreement.  Plaintiffs' counsel shall provide Defense Counsel at least 5 business days to review and object to any portion of the Preliminary Approval Motion and shall make any corrections reasonably requested.

(B)   The Preliminary Approval Motion will also seek: (i) the setting of a date for individuals to opt-out of this Agreement and/or provide objections to this Agreement, which date will be thirty (30) days from the initial mailing of Notice to the Class Members by the Administrator; and (ii) to set a date for the Fairness Hearing, for Final Approval of the Settlement which shall be no earlier than ninety (90) days following the date that the Court enters the proposed Preliminary Approval Order.

(C)   Plaintiff's Counsel will inform the Court in the Preliminary Approval Motion of the intended process to obtain a "Final Approval Order" and a "Dismissal with Prejudice" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) approve the proposed notice to the Class; (3) incorporate the terms of the releases set forth in this Agreement, including in Section 4.1 of this Agreement; (4) dismiss the Litigation with prejudice; (5) award Plaintiff's Counsel fees, expenses and costs (to the extent approved by the Court); (6) award the Enhancement Award to Named Plaintiff (to the extent approved by the Court); and (7) appoint the Administrator and award the Administrator fees and expenses.

(C)   The Parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and dismissal of the Litigation with prejudice. Any disputes which arise between the Parties related to the Parties' efforts to obtain a Preliminary Approval Order, Final Approval Order, dismissal of the Litigation with prejudice shall be submitted to the Court.

(D)   **Effect of Failure to Obtain Preliminary Approval.**  If the Court fails to enter the Preliminary Approval Order in accordance with this Agreement, or the Court issues an order preliminarily approving the Agreement in a form materially different from this Agreement, the Parties jointly agree to (a) seek reconsideration or appellate review of the decision denying the Preliminary Approval Motion, or (b) attempt to renegotiate a mutually agreeable settlement to address the issues raised by the Court and seek preliminary Court approval of the renegotiated settlement.  In the event any reconsideration is denied, the Parties cannot reach a mutually agreeable settlement, or a mutually agreed upon settlement is not

8

approved, the Parties shall have no further rights or obligations under this Agreement and the Litigation will proceed as if no settlement had been attempted, and the class action certification stipulated to herein shall be void *ab initio*. In such case, the Parties shall be returned to their respective statuses as of the date immediately prior to the execution date of this Agreement; the Parties shall proceed in all respects as though the Agreement had not been executed; nothing contained in this Agreement shall be used as an admission against either Party; and no Party to this Agreement shall be deemed to have waived or relinquished any rights, privileges, claims, or defenses by having entered into this Agreement.

**2.7    Class Member List.**  Within ten (10) days of the Court's entry of the Preliminary Approval Order, Defense Counsel will provide Plaintiff's Counsel and the Administrator, in electronic form and for all Class Members, the Class Member List. Plaintiff's Counsel agrees to keep the Class Member List and the information it contains ("Class List Information") strictly confidential and not to disclose, make available to anyone or use for any purpose, other than to respond to Class Member inquiries regarding the settlement, any Class List Information.

**2.8    Notice to Class**. The Notice will inform Class Members about this Settlement and will also advise them of their estimated Individual Settlement Award, the opportunity to object to, opt-out of, do nothing and remain in the Class in order to obtain a Settlement Check pursuant to this Agreement, and/or to appear at the Fairness Hearing. Within thirty (30) days of the entry of the Preliminary Approval Order by the court, the Administrator will mail to all Class Members, via First Class United States Mail, the Court–approved Notices of Proposed Class Action Settlement. The Administrator will take all reasonable steps to obtain the correct address of any Class Member prior to the initial Notice mailing by cross-referencing the National Change of Address database ("NCOA"). Additionally, the Administrator will take all reasonable steps to obtain the correct address of any Class Member for whom a Notice is returned by the post office as undeliverable, including one skip trace, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address. The Administrator will notify Plaintiff's Counsel and Defense Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement. No later than ten (10) days prior to Notice mailing, the Administrator will provide Plaintiff's Counsel and Defense Counsel with the list of Class Member's estimated awards.

**2.9    Opt-outs.**

(A)    Class Members, who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail a written, signed statement to the Administrator that states he or she is opting out of the settlement, and include his or her name, address, and telephone numbers and a statement indicating his or her intention to opt-out such as: "I opt out of the CoventBridge wage and hour settlement" ("Opt-out Statement"). To be effective, an Opt-out Statement must be post-marked or received by the Administrator within thirty (30) days after the initial mailing of Notice to the Class.

(B)    The end of the time period to opt-out of the settlement ("Opt-out Period") shall be thirty (30) days after the initial mailing of Notice to the Class.

(C)    The Claims Administrator will stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendant's Counsel not later than three (3) days after receipt thereof. Within 48 hours of the end of the Opt-out Period, the Administrator will send a final list and copies of all Opt-out Statements to Plaintiff's Counsel and Defense Counsel. The Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Administrator is relieved of its duties and responsibilities under this Agreement.

(D)    Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the dismissal with prejudice in this case and will have any State Law Wage and Hour Claims released and dismissed. Class Members who endorse one or more of their settlement check(s) will also release their FLSA Claims.

**2.10**    **Objections to Settlement.**

(A)    Objectors who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Administrator via First-Class United States Mail postmarked by thirty (30) days after the initial mailing of Notice to the Class. The statement must include all reasons for the objection, and any supporting documentation. The statement must also include the name, address, and telephone number for the Class Member making the objection. The Administrator will stamp the date received on the original and send copies of each objection, with supporting documents, to Plaintiff's Counsel and Defense Counsel by email delivery no later than three (3) days after receipt of the objection. The Administrator shall provide all objections in its final affidavit to be filed with the Motion for Final Approval no later than fifteen (15) days prior to the Fairness Hearing.

(B)    An Objector also has the right to appear at the Fairness Hearing, either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. An Objector is a Class Member, and any person who has requested exclusion may not submit objections to the settlement. An objection does not constitute the filing of an Opt-out Statement. No Class Members may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections.

(C)     The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.11**     **Fairness Hearing and Motion for Final Approval and Dismissal.**

(A)     In accordance with the schedule set by the Court in the Preliminary Approval Order and in advance of the Fairness Hearing, Class Counsel shall file an unopposed Motion for Final Approval, with supporting documents and materials for Final Approval of the settlement. The Motion for Final Approval may contain a compliance affidavit from the Administrator, an application for attorneys' fees, costs and expenses, and a supporting affirmation (with relevant documents) from Class Counsel regarding the fairness, adequacy and reasonableness of the Settlement or any aspect related to this Agreement. The Motion for Final Approval must also include a proposed Final Approval Order. Plaintiffs' counsel shall provide Defense Counsel at least 5 business days to review and object to any portion of the Motion for Final Approval and shall make any corrections reasonably requested.

(B)     At the Fairness Hearing and through the Motion for Final Approval, the Parties will request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) order the Administrator to distribute the Settlement Checks to the Class Members and Named Plaintiff; (3) order the attorneys' fees, expenses and costs to be paid to Plaintiff's Counsel out of the Settlement Account; (4) order the Administrator's fees and expenses to be paid out of the Settlement Account; (5) order the Enhancement Award(s) be paid out of the Settlement Account; (6) order the dismissal with prejudice of the Litigation and all State Law Wage and Hour Claims of all Class Members who did not opt-out; (7) order the dismissal with prejudice of the FLSA Claims of Class Members who endorsed any of their Settlement Check(s); (8) order the entry of a Final Judgment in accordance with this Agreement; and (9) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby until all payments are completed. Upon entry of the Final Approval Order, all claims for relief asserted in the Action will be dismissed with prejudice and on the merits.

**2.12**     **Effect of Failure to Grant Final Approval.** In the event the Court fails to enter the Final Approval Order in accordance with this Agreement, or such Final Approval Order does not become Effective as defined herein, or the Court issues an order finally approving the Agreement in a form materially different from this Agreement, the Parties jointly agree to (a) seek reconsideration or appellate review of the decision denying the Final Approval Motion, or (b) attempt to renegotiate a mutually agreeable settlement to address the issues raised by the Court and seek Court approval of the renegotiated settlement. In the event any reconsideration is denied, the Parties cannot reach a mutually agreeable settlement, or a mutually agreed upon settlement is not approved, the Parties shall have no further rights or obligations under this Agreement and the Litigation will proceed as if no settlement had been attempted, and the class action certification

stipulated to herein shall be void *ab initio*.  In such case, the Parties shall be returned to their respective statuses as of the date immediately prior to the execution date of this Agreement; the Parties shall proceed in all respects as though the Agreement had not been executed; nothing contained in this Agreement shall be used as an admission against either Party; and no Party to this Agreement shall be deemed to have waived or relinquished any rights, privileges, claims, or defenses by having entered into this Agreement.

**2.13    Discretionary Termination by Defendant Due to Opt-Outs.** In the event that five percent (5%) or more of Class Members timely opt out of the Agreement pursuant to Section 2.9, Defendant may, at its sole discretion, elect to void the Agreement prior to the Fairness Hearing by informing Class Counsel or the Court in writing.  In such event, Defendants shall be responsible for reimbursing the claims administrator for their fees and for retaining the claims administrator to send class members a postcard stating that the case is no longer settled.  In such case, the Parties shall be returned to their respective statuses as of immediately before the execution of this Agreement; the Parties shall proceed in all respects as though the Agreement had not been executed and no settlement ever been agreed to; nothing contained in this Agreement shall be used as an admission against either Party; and no Party to this Agreement shall be deemed to have waived or relinquished any rights, privileges, claims, or defenses by having entered into this Agreement.

## 3.    SETTLEMENT TERMS

**3.1    Settlement Fund Computation and Allocations.**

    (A)    **Settlement Fund Formula.** Individual Class Members' proportionate shares of the Settlement Fund shall be computed pursuant to the following formula:

       (1)    Each Class Member shall receive 1 point for every hour they worked at CoventBridge during the Relevant Time Period.

       (2)    The Settlement Fund, after deductions for Court-approved attorneys' fees and expenses, settlement administration fees and expenses, any Court-approved Enhancement Award, the Reserve Fund, and all other court approved expenses or disbursements, will be divided by the aggregate number of points accrued by all of the Class Members and any points that would have been attributable to any individuals who opted-out of the settlement had they remained Class Members ("Point Value");

       (3)    Each Class Member's total points will be multiplied by the Point Value to determine his or her "Individual Settlement Amount."

       (4)    Only Class Members who do not timely Opt-out under the terms of this Agreement shall be entitled to receive their Individual Settlement Amount.  Any funds attributable to Individual Settlement Amounts for Class Members who timely opt out under the terms of this Agreement shall be returned to Defendant.

    (B)    **Enhancement Award to Named Plaintiff.** Class Counsel shall seek Court Approval of the payment of Enhancement Award to Named Plaintiff Jane McSpirit

in consideration for work performed on behalf of the Class, which shall not exceed the total amount of Twenty-Five Thousand Dollars ($25,000.00) ("Enhancement Award"). Defendant shall not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court, provided it does not increase the Settlement Fund. The substance of Plaintiff's application for an Enhancement Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for Enhancement Awards shall not terminate this Agreement or otherwise affect the Court's Final Approval. Any reduction of the Enhancement Award shall be available for distribution pro-rata to Class Members in accordance with the Settlement Fund Formula in Section 3.1(A).

(C)   **Maximum Payment.** The Parties expressly acknowledge that Defendant shall not be required to pay more than the Settlement Fund of One Million Two Hundred Thousand Dollars and Zero Cents ($1,200,000.00) to the Class Members, Plaintiff's Counsel, Claims Administrator, Named Plaintiff, or to anyone else (excluding employer's share of payroll taxes due under this Agreement), regardless of the number of Class Members included in this settlement.

(D)   **Payment to the Settlement Fund.** The Settlement Fund shall be fully funded by Defendant into an escrow account held by the Administrator within seven (7) calendar days after the Final Effective Date (as defined below).

(E)   **Mailing of Settlement Checks.**

(1)   The Administrator shall, within fourteen (14) days of the Final Effective Date (as defined below), send Settlement Checks comprising the Plaintiffs' Individual Settlement Amounts, Plaintiff's Counsel's approved professional fees and expenses, and any approved enhancement award, to the Class Members, Plaintiff's Counsel, and Named Plaintiff, respectively. The Administrator shall also issue a check for the Administrator's fee.

(2)   Class Members shall have one hundred and twenty (120) days from the date of the final mailing of the Settlement Checks to negotiate the checks. Any Settlement Checks that have not been negotiated by the Check Void Date will be void.

(F)   **Reminder Notice.** Class Members who do not cash their Settlement Checks within one hundred (100) calendar days of the mailing will be sent a reminder notice by the Administrator. The Settlement Checks will be void after one hundred twenty (120) days after the mailing of the settlement checks, which will be the void date for all settlement checks.

(G)   **Redistribution and *Cy Pres*.** 50% of the amount of any undeposited Settlement Checks will be redistributed to the Class Members who cashed their initial Settlement Checks. If Class Counsel reasonably believes it would not be feasible

to redistribute those funds, the funds will be donated to a *cy pres* designee selected solely by Plaintiff's Counsel.  The remaining 50% of uncashed Settlement Checks will be returned to the Defendant.

**3.2      Professional Fees and Cost.** At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees of no more than one third of the Settlement Fund ($400,000.00) as well as reimbursement of their actual litigation expenses and costs. These fees and costs shall come out of the Settlement Fund. Defendant will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court, provided it does not increase the Settlement Fund. The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's Final Approval. Any reduction of attorneys' fees and costs shall be available for distribution pro-rata to Class Members in accordance with the Settlement Fund Formula in Section 3.1(A).  Further, Defendant shall pay mediator Ruth Raisfeld for her services through February 24, 2021, and this payment shall be made within thirty (30) days after the execution of this Agreement.

**3.3      Administrator's Fees.** As part of Named Plaintiff's motion for final approval of the settlement, Named Plaintiff will submit a declaration from the Administrator detailing the administration process, as well as the costs of administration. At the Fairness Hearing, Class Counsel will petition the Court to award the Administrator its fees and expenses to be paid out of the Settlement Fund. The substance of Class Counsel's application for the Administrator's fees and expenses is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to the request for Administrator costs and expenses shall not terminate this Agreement or otherwise affect the Court's Final Approval.  The Administrator Fees shall be deducted from the Settlement Fund prior to distribution of any monies to the Class Members, Class Counsel and/or the Plaintiff.  Any reduction of the Administrator's Fees shall be available for distribution pro-rata to Class Members in accordance with the Settlement Fund Formula in Section 3.1(A).

**3.4      Tax Characterization.**

(A)      Except as set forth below, settlement payments to the Class Members will be allocated as follows for tax purposes: (i) 50% in consideration for time worked as back-wage payments and/or wage income subject to W-2 reporting ("Wage Payment"); and (ii) 50% in consideration for liquidated damages, penalties, and interest as non-wage payments subject to 1099 reporting ("Non-Wage Payment").

(B)      All Wage Payments *(i.e.,* the portion set forth in Section 3.4(A)(i) above) shall be subject to all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") via Form W-2. All Non-Wage Payments shall be made without any tax withholdings and the

Administrator shall report these payments to the IRS via Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without any withholdings, and the Administrator shall report this payment to the IRS via Form 1099. Any Enhancement Award Payment shall be made without any withholdings and the Administrator shall report this payment to the IRS via Form 1099. Defendant and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in this Section 3.4. Defendant does not make any warranty or representation to Named Plaintiff, the Class, any Class Members, or Class Counsel regarding the tax consequences of any payments. The Claims Administrator will calculate the amount of employer-side payroll taxes that it estimates will need to be paid and will inform Defense Counsel of such amount no later than seven (7) days after the Court grants Final Approval of the settlement.

(C)     In addition to the Settlement Amount, Defendant shall pay the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the Wage Payments.

(D)     The Administrator shall be responsible for making all withholdings from employees' settlement payments required pursuant to any federal, state, or local tax law or regulation, with respect to the Wage Payments, including but not limited to the employee's share of the FICA tax, and any federal and state unemployment or other tax required to be withheld from wages.

**3.5     Non-Publicity.** Neither Named Plaintiff nor Plaintiff's Counsel shall publicize in any way any allegations in the Litigation, any terms or conditions of the settlement, or any discussions, conversations, or negotiations leading up to it, including on any blogs, websites, or social media sites or in the media. However, if Law360 (not as a result of any direct or indirect action on the part of Named Plaintiff or Plaintiff's Counsel) publishes an article regarding the Litigation and/or Settlement, or Westlaw or LexisNexis publishes a decision from the Litigation, Plaintiff's Counsel reserves the right to republish the article or court decision on Plaintiff's Counsel's website on or after January 6, 2022.

**3.6     Employees Outside New York.** Plaintiff's Counsel states that they currently do not represent any current or former employees of Defendant who work outside of New York State.

**3.7     Named Plaintiff's Time to Consider and Revoke.** Named Plaintiff has twenty-one (21) days after receiving this Agreement to consider it. After Named Plaintiff signs the Agreement, she has seven (7) days to revoke it by sending written notice to Defendant. Named Plaintiff's participation in the settlement is a material term of settlement.

68910315v.2

**4.**     **RELEASE**

**4.1**   **Release of Claims.**

(A)     **Release of State Law Wage and Hour Claims.** Upon the Final Approval Order being issued, and except as to such rights or claims as may be specifically created by this Agreement, each Class Member who has not opted-out of this Agreement in accordance with Section 2.9 above, fully releases and discharges (on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents and attorneys) Defendant and its respective affiliates, subsidiaries (including but not limited to any grandchild entities, great-grandchild entities, and so on), parents (including but not limited to any grandparent entities, great-grandparent entities, and so on), divisions, shareholders, members, predecessors, successors, and assigns, and each of their past and present officers, directors, trustees, fiduciaries, insurers, owners, investors, attorneys, administrators, employees, agents, representatives, shareholders, members, joint employers, predecessors, successors, and assigns, in their individual and official capacities, and all persons or entities acting by, through, under or in concert with any of them (together with Defendant, collectively the "Releasees"), from any and all State Law Wage and Hour Claims (as defined above), through the date of the Final Approval Order.

(B)     **Release of FLSA Claims.** Upon the Final Approval Order being issued, and except as to such rights or claims as may be specifically created by this Agreement, each Class Member who endorses and/or negotiates a settlement check (or whose settlement check is lawfully endorsed and/or negotiated by an heir, spouse, executor, administrator, agent or attorney), also fully releases and discharges the Releasees, on Class Member's own behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, from any and all FLSA Claims (as defined above), through the date of the Final Approval Order.

(C)     All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

   **"FINAL RELEASE OF CLAIMS:**

   By signing this settlement check I hereby release CoventBridge (and companies or individuals related to Coventbridge) from all claims relating to my wages, compensation or hours of work, through the date of my signature.  I understand that the claims I am releasing are described more fully in a Notice of Settlement that I received.  I understand that the claims I am releasing include but are not limited to any claims under the Fair Labor Standards Act, the New York Labor Law and/or any other applicable wage and hour law, rule or regulation, including, but not limited to, minimum wage, overtime, and notice claims.  I understand that I cannot modify this paragraph and that if I sign this check the original language will be binding on me.

   _____        _____

68910315v.2

Signature                                    Date

The Claims Administrator shall provide Defendant signed copies of each Settlement Check after they have been cashed.

(D)    In addition to the waiver and release contained in 4.1(A)-(B) above, and in consideration for the Enhancement Award received under 3.1(B), the Named Plaintiff knowingly and voluntarily, on her own behalf, and on behalf of her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Releasees from any and all claims arising up to and as of the date of this Agreement, both known and unknown, which the Named Plaintiff has or may have against Releasees including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1965; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code; The Equal Pay Act; the Genetic Information Nondiscrimination Act of 2008; The Employee Retirement Income Security Act of 1974; The Immigration Reform and Control Act; The Consolidated Omnibus Budget Reconciliation Act; The Americans with Disabilities Act of 1990; The Fair Credit Reporting Act; The Occupational Safety and Health Act; The Rehabilitation Act; The Federal Worker Adjustment and Retraining Notification Act; The Family and Medical Leave Act; The Age Discrimination in Employment Act; The Federal False Claims Act; The New York Worker Adjustment and Retraining Notification Act; The New York Corrections Law, including Sections 750-755 thereof; The New York State Human Rights Law; The New York Civil Rights Law; The New York City Human Rights Law; and any other federal, state, and/or local law or ordinance. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees and costs. To ensure closure, Named Plaintiff agrees not to knowingly seek or accept employment with Defendant and that this Agreement shall be cause for Defendant to employ her. In the event the Court does not award the Named Plaintiff any portion of her sought Enhancement Award, such Named Plaintiff shall only release claims pursuant to Sections 4.1(A) and 4.1(B).

(E)    Upon execution of this Agreement, Defendant agrees to release and hold harmless the Named Plaintiff from any and all claims, whether known or unknown, arising under any statute or law, from the beginning of time to the date of the execution of this agreement.

## 5.    INTERPRETATION AND ENFORCEMENT

**5.1    Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2     No Assignment.**  Class Counsel and Named Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**5.3     Non-Admission of Liability.**  By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Plaintiffs, individually or collectively, all such liability being expressly denied.  Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class or collective action litigation other than for purposes of settlement.  Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs.  Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (i) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all complaints filed in the Litigation; and (ii) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding.  The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.  Plaintiffs will not be deemed or considered a prevailing party or parties.

**5.4     Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.5     Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.6     Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**5.7     Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.8     Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.9     Blue Penciling.** If any provision of this Agreement except Section 4.1 is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force.  Section 4.1 shall not be severable.  If Section 4.1, is

held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the entire Agreement shall be void and unenforceable.  As noted in Section 5.13, however, this Agreement will not become fully effective unless and until the Court approves it.

**5.10    Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.11    Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**5.12    Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.13    When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective as follows:  (a) as to obligations due to be performed before Final Approval, this Agreement shall be become effective upon its full execution (the "Initial Effective Date"); and (b) as to any and all other obligations, including but not limited to any obligations on the part of Defendant to pay any amount to any person, this Agreement shall be become effective on the first business day following the date that the Court's final approval of the Agreement is finally affirmed on appeal and/or is no longer subject to appeal or certiorari, and the time for any petition for re-argument, appeal, or review, by certiorari or otherwise, has expired (i.e., thirty-one days from entry of the Final Approval Order) (the "Final Effective Date").  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.14    Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign, on paper or electronically, on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**

68910315v.2

**NAMED PLAINTIFF**                        **DEFENDANT**

By: Jane McSpirit (Apr 7, 2021 15:26 EDT)        By: _____

    Jane McSpirit                                  CoventBridge (USA), Inc.
                                Title:_____

Dated: __0407__, 2021                     Dated: _____, 2021


**CLASS COUNSEL**
*As to Sections 2.7, 3.5. and 3.6 only,*

By: _Brian Schaffer_____

    Brian S. Schaffer, Esq.
Fitapelli & Schaffer, LLP
Dated: __April 8_____, 2021

**NAMED PLAINTIFF**                                    **DEFENDANT**

By: _____          By: _____
     Jane McSpirit                                           CoventBridge (USA), Inc.
                                              Title: Chief Executive Officer


Dated: _____, 2021                    Dated:  April 8, 2021



**CLASS COUNSEL**
*As to Sections 2.7, 3.5. and 3.6 only*,

By: _____
     Brian S. Schaffer, Esq.
Fitapelli & Schaffer, LLP
Dated: _____, 2021

68910315v.2