**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JANE MCSPIRIT, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | |
| **-against-** | |
| **COVENTBRIDGE (USA) INC.,** | **No. 20 Civ. 05754** |
| **Defendant.** | |

**MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiff and the Class*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................... iv

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

   I.   THE PROPOSED RULE 23 SETTLEMENT SHOULD BE APPROVED ...................... 2

     A.  The Proposed Settlement Class Should Be Certified. ....................................................... 2

     B.  The Proposed Settlement is Fair, Reasonable, and Adequate, and Should Be Approved. 2

       1. The Settlement is Procedurally Fair and Should Be Approved. ..................................... 3

       2. The Settlement is Substantially Fair and Meets the *Grinnell* Standards for Class Action Settlement Approval. .................................................................................................. 4

       a) Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1). .. 4

       b) The Reaction Of The Class Has Been Positive (*Grinnell* Factor 2). ............................ 5

       c) Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)......................................................................................... 6

       d) Plaintiff Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 And 5)..... 7

       e) Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6). ........................................................................................................................ 8

       f) Defendant's Ability To Withstand A Greater Judgment Is Not Assured (*Grinnell* Factor 7)....................................................................................................................................... 9

       g) The Settlement Fund Is Substantial In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9). ................................................. 9

   II.   THE COURT SHOULD ISSUE FINAL APPROVAL OF THE FLSA SETTLEMENT  11

   III.   SERVICE AWARDS SHOULD BE AWARDED TO THE NAMED PLAINTIFF .... 11

   IV.   CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED ................................................................................... 14

     A.  The Percentage Method Is The Preferred Method For Awarding Attorneys' Fees In Common Fund Cases In The Second Circuit. ...................................................................... 15

     B.  The *Goldberger* Factors Support An Award Of One-Third Of The Common Fund. ..... 18

     C.  Class Counsel's Time And Labor. ..................................................................................... 18

       1. The Litigation's Magnitude And Complexity ................................................................ 19

       2. The Risks Of Litigation.................................................................................................. 20

       3. Quality Of The Representation. ..................................................................................... 21

       4. The Fee Is Reasonable In Relation To The Settlement.................................................. 22

       5. Public Policy Considerations. ........................................................................................ 22

D.   The Lodestar Cross Check Further Supports An Award To Class Counsel Of One-Third Of The Settlement Fund. ................................................................................................. 23

E.   Class Counsel Is Entitled To Reimbursement Of Their Litigation Expenses. ............... 25

CONCLUSION ..................................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Almonte v. Marina Ice Cream Corp.,* No. 16 Civ. 660 (GBD), 2016 WL 7217258 (S.D.N.Y. Dec. 8, 2016)...................................................................................................................... 21

*Anthony v. Franklin First Financial*, 844 F. Supp. 2d 504 (S.D.N.Y. 2012 ............................... 18

*Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ..................................................................................................................... 17

*Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ........................................ 19

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (2013) ............................................................ passim

*Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18 Civ. 885, 2021 WL 3008480 (S.D.N.Y. June 15, 2021)............................................................................................................. 13

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ............................................................................................................................. 10

*Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211(LTS) (HP), 2011 WL 2208614 (S.D.N.Y. June 7, 2011)........................................................................................... 17

*Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015)..................................... 10

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)................................................ 2, 4

*Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y. May 11, 2010)........................................................................................... 20

*Cruz v. Sal-Mark Restaurant Corp.*, No. 17 Civ. 815 (DJS), 2019 WL 355334 (N.D.N.Y. Jan. 28, 2019) ................................................................................................................. passim

*deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440 (DAB), 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ............................................................................................................... 4

*Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 (LTS), 2011 WL 9380874 (S.D.N.Y. Sept. 21, 2011) ................................................................................................................... 4

*Duchene v. Michael Cetta, Inc.*, No. 06 Civ. 4576, 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009) ............................................................................................................................. 13

*Elliot v. Leatherstocking Corp.*, No. 10 Civ. 934 (MAD/DEP), 2019 WL 355334 (N.D.N.Y. Dec. 4, 2012) ................................................................................................................... 3

*Flores v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) .. 3, 7, 12, 15

iv

*Flynn v. N.Y. Dolls Gentlemen's Club*, No. 13 Civ. 6530 (PKC) (RLE), 2015 WL 3916161 (S.D.N.Y. April 28, 2015)...................................................................................................... 25

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ................................................ 20

*Goldberger v. Integrated Res., Inc.*, 209 F.3d (2d Cir. 2000)............................................... passim

*Hadel et al. v. Gaucho LLC*, No. 15 Civ. 3706 (RLE) (S.D.N.Y. June 30, 2016) ................ 17, 24

*Hanifin v. Accurate Inventory & Calculating Serv., Inc.*, No. 11 Civ. 1510, 2014 WL 4352060 (N.D.N.Y. Aug. 20, 2014) ....................................................................................................... 25

*Harper v. GEICO*, No. 09 Civ. 2254 (LDW) (GRB), 2015 WL 9673810 (E.D.N.Y. Nov. 16, 2015) ........................................................................................................................................ 8

*Hart v. RCI Hospitality Holdings, Inc.*, No. 09 Civ. 03043 (PAE), 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015). ....................................................................................................................... 21

*Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF)(DCF), 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ...................................................................................................... 15

*Hill v. County of Montgomery*, No. 14 Civ. 933 (BKS/DJS), 2021 WL 2227796 (N.D.N.Y. Jun. 2, 2021) .............................................................................................................................. passim

*Holick v. Cellular Sales of New York, LLC*, No. 12 Civ. 584 (NAM/DJS), 2019 WL 1877176 (N.D.N.Y. Apr. 26, 2019) ........................................................................................................ 8

*Illoldi et al. v. Koi Group Inc. et al.*, No. 15 Civ. 6838 (VEC) (S.D.N.Y. Oct. 7, 2016) ............. 21

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000)........... 5, 6

*In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)...................................................... 6

*In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344 (S.D.N.Y. 2014)................. 20, 23

*In re Ira Haupt & Co.*, 304 F. Supp. 917 (S.D.N.Y. 1969) ........................................................... 7

*In re Lawrence*,24 N.E.3d 320, 2014 WL 5430622 (N.Y. Oct. 28, 2014) ................................... 16

*In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393 (1999)................................................... 22

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)........................................... 6

*Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376 (S.D.N.Y Sept. 16, 2011) .......... 3

*Karic v. The Major Auto. Companies, Inc.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037 (Apr. 27, 2016) ...................................................................................................... 15, 17, 18, 22

*Kirby v. FIC Restaurants, Inc.* No. 19 Civ. 1306 (FJS/ML), 20200 WL 5791582 (N.D.N.Y. Sep.

28, 2020) .................................................................................................................................. 15

*Kirby v. FIC Restaurants, Inc.*, No. 19 Civ. 1306 (FJS/ML), 2020 WL 3501398 (N.D.N.Y. June 29, 2020); .................................................................................................................. 16, 17, 21

*Major Auto. Companies, Inc.*, No. 09 CV 5708 (CLP), 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) .................................................................................................................................. 14

*Manley v. Midan Rest. Inc.*, No. 14 Civ. 1693, 2017 WL 1155916 (S.D.N.Y. March. 27, 2017) 17

*Massiah v. MetroPlus Health Plan, Inc.,* No. 11 Civ. 05669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) .................................................................................................................................... 9

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995) ................................. 2

*McDaniel v. Cnty. of Schenectady*, 595 F.3d 411 (2d Cir. 2010) ................................................ 15

*Mentor v. Imperial Parking Systems, Inc.*, No. 05 Civ. 7993 (WHP), 2010 WL 5129068 (S.D.N.Y. Dec. 15, 2010)........................................................................................................ 14

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ...................................... 4

Newman v. Stein, 464 F.2d 689 (2d Cir.1972) ............................................................................. 11

*Parker v. Jekyll & Hyde Entm't Holdings,* LLC, No. 08 Civ 7670 (BSJ)(JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ......................................................................................................... 24

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ......................................................................................................... 14

*Puglisi v. TD Bank, N.A*., No. 13 Civ. 637, 2015 WL 4608655 (E.D.N.Y. July 30, 2015)... 17, 22, 25

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520 (JLC), 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) ....................................................................................................... 25

*Raniere v. Citigroup, Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015) ..................................................... 19

*Ray v. 1650 Broadway Associates, Inc.*, No. 16 Civ. 9858 (VSB), 2020 WL 5796203 (S.D.N.Y. Sep. 29, 2020) .......................................................................................................................... 2

*Reyes v. Altamarea Grp.*, No. 10-CV-6451 (RLE), 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ...................................................................................................................................................... 14

*Sanchez v. Kambousi Restaurant Partners, LLC*, No. 15 Civ. 5880 (CM)(HBP), 2016 WL 11717105 (S.D.N.Y. Aug. 5, 2016)......................................................................................... 3

*Sand v. Greenberg*, No. 08 Civ. 7840 (PAC), 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) ........... 15

*Savoie v. Merchants Bank*, 166 F.3d 456 (2d Cir. 1999) ......................................................... 16, 17

*Scott v. Chipotle Grill, Inc.*, Nos. 17-2208-cv, 18-359-cv (2d. Cir. Apr. 1, 2020) ......................... 8

*Scott v. City of New York*, 643 F.3d 56 (2d Cir. 2011) ................................................................... 19

*See e.g.*, *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411 (S.D.N.Y. 2014) .............. 6, 24

*Sewell v. Bovis Lend Lease, Inc. et al.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124 (S.D.N.Y. April 16, 2012) ........................................................................................................................ 12, 16

*Solis v. Orthonet, LLC*, No. 19 Civ. 4678 (VSB), 2021 WL 2678651 (S.D.N.Y. June 30, 2021) ............................................................................................................................................ 19, 20, 21

*Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (RLE), 2014 WL 3778173 (S.D.N.Y. July 31, 2014) ............................................................................................ passim

*Sykes v. Harris*, No. 09 Civ. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ............. 13

*Tiro v. Pub. House Invs., LLC,* Nos. 11 Civ. 7679 (CM) *et al.*, 2013 WL 2254551 (S.D.N.Y. May 22, 2013). ..................................................................................................................................... 4

*Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ............................................................................................................. 3

*Viafara v. MCIZ Corp.*, No. 12 Civ. 7452 (RLE), 2014 WL 1777438 (S.D.N.Y. May 1, 2014). 24

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ....................... 3, 7, 16

*Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ......... 14

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG) 2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013) ...................................................................................................................................... 2

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ................................................................................................................................... 17, 25

*Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) 25

*Zorilla v. Carlson's Restauarnts, Inc.*, No. 14 Civ. 2740 (AT), 2017 WL 5004848 (S.D.N.Y. Oct. 26, 2017) ..................................................................................................................................... 21

## RULES

Fed. R. Civ. P. 23(f) ....................................................................................................................... 8

Federal Rule of Civil Procedure 23(a) ........................................................................................... 2

Federal Rule of Civil Procedure 23(b)(3) ............................................................................. 2

Federal Rule of Civil Procedure 23(e) ................................................................................. 2

## INTRODUCTION

Named Plaintiff Jane McSpirit submits this memorandum of law in support of her Motion for Final Approval of the Class Action Settlement brought on behalf of individuals who have worked for CoventBridge (USA), Inc. (collectively, "Defendant") as investigators and all other similarly situated employees (collectively "Investigators"). The One Million Two Hundred Thousand Dollars ($1,200,000.00) settlement resolves all claims before this Court, pursuant to the proposed compromise set forth in the Settlement Agreement and Release ("Settlement Agreement") (attached to the Declaration of Brian Schaffer as **Exhibit ("Ex.") A**). [1] The Settlement Agreement also does not require Class Members to return claim forms, meaning all Class Members will receive payment from the Settlement Agreement. As a result, the Settlement Agreement satisfies all criteria for final approval.[2]

On July 15, 2021 the Court took the first step in the settlement approval process by granting preliminary approval, directing thar notices be mailed to Class Members, and setting the date for the final fairness hearing.  Schaffer Decl. ¶ 34; **Exhibit ("Ex.") B**, Preliminary Approval Order; **Ex. C**, Declaration of Katherine Rovertoni ("Rovertoni Decl.") ¶¶ 8-10, Class Notice (attached as **Ex. 1** to the Rovertoni Decl.). Class Members have been notified of the terms of the settlement, and Class Counsel has received numerous phone calls and emails from Class Members who have reacted positively to the settlement terms.  Schaffer Decl. ¶ 35.  No Class Member has opted out or objected to the settlement.  *Id.* ¶¶ 38-39; **Ex. C**, Rovertoni Decl. ¶¶ 10-11.  With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

---

[1] All Exhibits are attached to the Declaration of Brian S. Schaffer ("Schaffer Decl.").
[2] *See* Schaffer Decl. for procedural history of the case.  Schaffer Decl. ¶¶ 4-41.

## ARGUMENT

## I.    THE PROPOSED RULE 23 SETTLEMENT SHOULD BE APPROVED

"Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate." *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (RLE), 2014 WL 3778173, at *4 (S.D.N.Y. July 31, 2014) (citing Fed. R. Civ. P. 23). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Ray v. 1650 Broadway Associates, Inc.*, No. 16 Civ. 9858 (VSB), 2020 WL 5796203, at *3 (S.D.N.Y. Sep. 29, 2020) (citing *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995)). In exercising this discretion, "district courts often give weight to the fact that the parties have chosen to settle." *Id.* (citing *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG) 2013 WL 1832181 at *1 (S.D.N.Y. Apr. 30, 2013)). "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

### A.    The Proposed Settlement Class Should Be Certified.

For the reasons set forth in Plaintiff's Motion for Preliminary Approval, the Court should grant final certification because the settlement class conditionally certified by the Court on April 15, 2021 satisfies the requirements of Fed. R. Civ. P. 23(a) & (b)(3).  *See* ECF No. 21.

### B.    The Proposed Settlement is Fair, Reasonable, and Adequate, and Should Be Approved.

Under Rule 23(e), district courts "must determine whether the proposed settlement is 'fair, reasonable and adequate'" when approving a class action settlement. *Cruz v. Sal-Mark Restaurant Corp.*, No. 17 Civ. 815 (DJS), 2019 WL 355334, at *4 (N.D.N.Y. Jan. 28, 2019) (quoting *Elliot v. Leatherstocking Corp.*, No. 10 Civ. 934 (MAD/DEP), 2019 WL 355334, at *7 (N.D.N.Y. Dec. 4,

2012). "Federal courts within this Circuit make the fairness determination based upon 'two types of evidence:' (1) substantive and (2) procedural." *Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852, at *11 (S.D.N.Y. Nov. 30, 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).  "If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  There is a 'strong judicial policy favoring settlements' of class action suits." *Hill v. County of Montgomery*, No. 14 Civ. 933 (BKS/DJS), 2021 WL 2227796, at *3 (N.D.N.Y. Jun. 2, 2021) (citing *In re EVCI*, 2007 WL 2230177, at *4). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Id.* at *3 (N.D.N.Y. Jun. 2, 2021) (quoting *Wal-Mart Stores,* 396 F. 3d at 116). Moreover, There is a "strong judicial policy favoring settlements' of class action suits." *Flores v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2014 WL 321831, at *4 (S.D.N.Y. Jan. 29, 2014) (quoting *Wal-Mart Stores*, 396 F.3d at 116).

### 1.  The Settlement is Procedurally Fair and Should Be Approved.

The instant settlement is procedurally fair because it was reached after Class Counsel conducted a thorough investigation of the claims and defenses, evaluated the strengths and weaknesses of those claims and defenses, and engaged in arm's length negotiations with Defendant, including two private mediations. Schaffer Decl. ¶¶ 17-25; *see*, *e.g.*, *Sanchez v. Kambousi Restaurant Partners, LLC*, No. 15 Civ. 5880 (CM)(HBP), 2016 WL 11717105, at *7 (S.D.N.Y. Aug. 5, 2016) (finding the settlement mediated by Ruth Raisfeld to be fair); *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *8 (S.D.N.Y Sept. 16, 2011) ("These arm's-length negotiations involved counsel and [Ruth Raisfeld] a mediator well-versed in wage and hour

law, raising a presumption that the settlement achieved meets the requirements of due process.");

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) (same); *Dorn v.*

*Eddington Sec., Inc.*, No. 08 Civ. 10271 (LTS), 2011 WL 9380874, at *3 (S.D.N.Y. Sept. 21, 2011);

*deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440 (DAB), 2010 WL 3322580, at *4 (S.D.N.Y. Aug.

23, 2010). Therefore, the settlement is procedurally fair and should be approved.

### 2. The Settlement is Substantially Fair and Meets the *Grinnell* Standards for Class Action Settlement Approval.

The settlement is substantively fair because its terms are fair, adequate, and reasonable

pursuant to the analytical framework set forth by the Second Circuit in *Grinnell*. 495 F.2d at 448,

*abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

The *Grinnell* factors in determining whether a settlement is substantially fair are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class; (3) the stage of the proceedings and the
> amount of discovery completed; (4) the risks of establishing
> liability; (5) the risks of establishing damages; (6) the risks of
> maintaining the class action through the trial; (7) the ability of the
> [d]efendant to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible
> recovery; and (9) the range of reasonableness of the settlement fund
> to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463. "The evaluation of a proposed settlement requires an amalgam of delicate balancing,

gross approximations and rough justice," rather than applying the factors in a systematic manner.

*Id.* at 468. Here, the *Grinnell* factors weigh in favor of final approval.

### a) Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1).

"To assess the substantive fairness of a settlement, courts weigh the benefits of a potential

settlement against the time and expense of continued litigation." *Tiro v. Pub. House Invs., LLC*,

Nos. 11 Civ. 7679 (CM) *et al.*, 2013 WL 2254551, at *6 (S.D.N.Y. May 22, 2013). (citation

omitted).  Moreover, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).

Here, continued litigation of this matter would cause additional expense and delay.  In addition to the significant paper and payroll discovery already obtained, additional discovery would be required to establish liability and damages, including depositions of Plaintiff, Class Members, Defendant, and Defendant's managers and/or employees.  A fact-intensive trial would be necessary and the preparation and putting on of evidence at such a trial would consume time and resources, as well as demand substantial judicial resources.  A trial on damages would be costly and would further defer closure.  Furthermore, any judgment would likely be appealed, which would extend the duration of the litigation.  However, the settlement agreed to by the parties makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of final approval. *See Hill*, 2021 WL 2227796, at *3-4 (citing *Austrian & German Bank*, 80 F. Supp. 2d at 174 (finding the first *Grinnell* factor supported approval because "[l]itigation through trial would be complex, expensive and long" and because of the potential of post-trial appeal).

### b)  The Reaction Of The Class Has Been Positive (*Grinnell* Factor 2).

 "The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness." *Cruz*, 2019 WL 355334, at *5 (internal citations and quotation marks omitted).  The Notices sent to Class Members explained the allocation formulas, provided an estimate of each Class Members' award, and informed FRCP 23 Class Members of their right to object or to exclude themselves from the settlement.  **Ex. C**, Rovertoni Decl., **Ex. 1**, Class Notice at 2.  No Class Members excluded themselves from the Settlement, and no Class Members objected

to the Settlement.  Schaffer Decl. ¶¶ 38-39; **Ex. C**, Rovertoni Decl. ¶¶ 10-11.  *See e.g.*, *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) (general approval of the settlement agreement indicated where only six out of 486 class members opted out).  Of the individuals who have contacted Class Counsel, the reaction has been positive to the Settlement terms.  Schaffer Decl. ¶ 40. Therefore, this factor weighs in favor of final approval.

### c) Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3).

The third *Grinnell* factor questions "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001))l *see also Hill*, 2021 WL 2227796 at *4 (citations omitted) ("there is no particular threshold that discovery must reach in order to demonstrate that discovery has advanced far enough to allow the parties to resolve the case responsibly. The analysis turns upon whether counsel had an adequate appreciation of the merits of the case before negotiating").  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Austrian & German Bank*, 80 F. Supp. 2d at 176.

Here, F&S thoroughly researched the factual and legal issues relevant to the claims at hand, interviewed Plaintiff, and reviewed thousands of documents and payroll of Class Members. Schaffer Decl. ¶¶ 17-20.  Moreover, using this production, Plaintiff was able to calculate class-wide damages for all employees under federal and state wage and hour law.  *Id.* ¶ 21.

Through this discovery process, Class Counsel was able to narrow the issues raised in their Complaint, assess the potential value of Plaintiff's claims, and assess the risk of establishing liability and damages against Defendant. *see e.g.*, *Cruz*, 2019 WL 355334, at *5 (finding the third

factor satisfied where class counsel "interviewed several current and former employees of [d]efendants including the named plaintiff, opt-in plaintiffs and class members...obtained, reviewed, and analyzed documents provided by the named plaintiff and defendants...fielded questions from Class Members; performed extensive legal research; and compiled and negotiated a damages analysis and discussed the same on the telephone and in person, including at a mediation"). As such, this factor supports approval.

### d) Plaintiff Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 And 5).

Courts "assess the risks of litigation against the certainty of recovery under the proposed settlement" when evaluating the risks of establishing liability. *Baudin*, 2020 WL 4732083, at *8 (citations omitted). Courts recognize that "[l]itigation inherently involves risks" and that regardless of the plaintiff's perceived strength of a case, liability is "no sure thing." *Wal-Mart Stores*, 396 F.3d at 118. "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Anjost*, 2014 WL 321831, at *5 (quoting *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)).

Plaintiff's principal allegations against Defendant under the FLSA and New York Labor Law ("NYLL") allege that Defendant failed to correctly compensate Investigators for their all hours worked, specifically their travel and reporting time. These claims are fact-intensive, thus Plaintiff would face substantial litigation over whether Plaintiffs were even owed travel time compensation in the first place, as it would rely on them consistently performing work before or after they traveled to jobsites, something that is vigorously contested by Defendant. Moreover, Defendant argued, among other things, that (i) Plaintiff and other Investigators were not entitled to "gap time" under the NYLL, similar to the FLSA (which does not permit such recovery), (ii) Defendant's policies did not dissuade Investigators from recording all of their time, (iii) Investigators were not manual

workers for the purposes of NYLL § 191.  As a result, Plaintiff would potentially face an uphill battle to establish any violations of federal and state law.

While Plaintiffs believe that they could ultimately establish Defendant's liability and damages, this would require significant factual development and favorable outcomes on dispositive motions, trial and on appeal, all of which are inherently uncertain and lengthy.  By agreeing to the proposed settlement, Plaintiff alleviates these concerns.  Thus, this factor supports final approval. *See Baudin*, 2020 WL 4732083, at *8 (finding that plaintiffs' need to prove that they worked unpaid overtime hour would involve "risks to both liability and damages").

### e) Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6).

The risk of obtaining class certification and maintaining it through trial also supports final approval.  Prior to settlement, the Court had not yet conditionally certified the collective under 29 U.S.C. § 216(b) or certified the classe under Rule 23. Such determinations would likely be reached only after rounds of extensive briefing.  In the event that the Court granted conditional collective certification, Defendant could challenge such certification with a motion to decertify.  *See, e.g.*, *Holick v. Cellular Sales of New York, LLC*, No. 12 Civ. 584 (NAM/DJS), 2019 WL 1877176, at *9 (N.D.N.Y. Apr. 26, 2019) *(appeal filed* 2019 WL 1877176) (decertifying FLSA collective); *Harper v. GEICO*, No. 09 Civ. 2254 (LDW) (GRB), 2015 WL 9673810, at *6 (E.D.N.Y. Nov. 16, 2015) (recommending decertification of FLSA collective).  Even if the court certifies the class, Defendant would likely seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f). For instance, in *Scott v. Chipotle Mexican Grill, Inc.*, after 5 years of contested litigation, the court denied the plaintiffs motion for class certification. *See* No. 12 Civ. 8333 (ALC)(SN), 2017 WL 1287512, at *1 (S.D.N.Y. Mar. 29, 2017). Three years later, the Second Circuit affirmed denial of class certification. *Scott v. Chipotle Grill, Inc.*, Nos. 17-2208-cv, 18-359-cv (2d. Cir. Apr. 1, 2020).

Defendant would also likely argue that individual questions preclude Rule 23 class certification, especially given the nature of Investigator's duties and whether each individual performed was entitled to travel time pay. Settlement eliminates this risk, expense, and delay, and supports final approval.

### f) Defendant's Ability To Withstand A Greater Judgment Is Not Assured (*Grinnell* Factor 7).

Here, the Settlement Agreement provides substantial recovery for the Class Members at a considerable cost to Defendant. While Defendant operates a substantial business, it is not, for example, a publicly traded company with resources to both litigate the matter to verdict, and if Plaintiff succeeds, potentially pay a greater judgment. Under these circumstances, this factor is neutral and does not preclude the Court from approving the final settlement.

### g) The Settlement Fund Is Substantial In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9).

"The determination of whether a settlement amount is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *Baudin*, 2020 WL 4732083 at *9 (quoting *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 05669, 2012 WL 5874655, *5 (E.D.N.Y. Nov. 20, 2012). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Frank*, 228 F.R.D. at 186). *Wal-Mart Stores*, 396 F. 3d at 119). "[W]hen settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable." *Hill*, 2021 WL 2227796 at * 5 (citations omitted). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part

of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2; *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at \*12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

The total $1,200,000 settlement amount represents a good value given the risks of litigation, even though the recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. Schaffer Decl. ¶ 30. As outlined above in Section I(B)(2)(d), Plaintiff's FLSA and NYLL, claims involve inherently fact-intensive inquiries into allegations that the Defendant denies. These risks are significant, as Plaintiff's principal claims for damages rest on whether they were entitled to travel time compensation. In the event that a Court ruled against Plaintiff, she would be entitled to nothing.

Class Members will each receive an average net settlement payment (net of attorneys' fees, costs, service awards, and claims administration fees) of approximately $3,373.59, well within the upper range of average FLSA recoveries. Schaffer Decl. ¶ 41; **Ex. C**, Rovertoni Decl. ¶ 12. *See Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-07 (2d Cir. 2015) (quoting *Picerni v. Bilingual Seit & Preschool Inc.*, 925 F. Supp. 2d 368 (E.D.N.Y. 2013)) ("noting that FLSA cases tend to settle for between $500 and $2000 dollars in unpaid wages."). Moreover, the maximum individual award amount is $22,428.42 Schaffer Decl. ¶ 41, **Ex. C**, Rovertoni Decl. ¶ 13.

"In evaluating this and the ninth Grinnell factor, there is no particular number that must be reached for this percentage to be reasonable. Rather, the settlement amount must be located within 'a range of reasonableness . . . a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Cruz*, 2019 WL 355334 (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d

Cir.1972)).  However, as there are substantial risks associated with further litigation of Plaintiff's claims, the settlement falls within the range of reasonableness when taking into account Plaintiff's chances of success.

## II.    THE COURT SHOULD ISSUE FINAL APPROVAL OF THE FLSA SETTLEMENT

Plaintiff also requests that the Court approve the settlement of their FLSA claims.  "The standard for approval of an FLSA settlement is significantly lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as a Rule 23 settlement."  *Baudin*, 2020 WL 4732083, at *10 (citations omitted). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes" *Cruz*, 2019 WL 355334, at *6 (citations omitted).  If the proposed settlement reflects a reasonable compromise of the contested issues, the court should approve the settlement.  *Id.*

Here, the parties were represented by experienced wage and hour counsel and the parties engaged in active litigation and months of arm's length negotiations, including the exchange of extensive discovery and damages calculations in an effort to reach the settlement.  Schaffer Decl. ¶¶ 17-24.  Therefore, FLSA approval is warranted.  *See, e.g., Baudin*; 2020 WL 4732083, at * 10 (granting final approval of FLSA settlement); *Cruz*, 2019 WL 355334, at *6 (same).

## III.    A SERVICE AWARD SHOULD BE AWARDED TO THE NAMED PLAINTIFF

Pursuant to the Settlement Agreement, and subject to Court approval, a service award to the Plaintiff, in addition to her individualized awards under the allocation formula, is requested in recognition of the services she rendered on behalf of the Class Members in the amount of $25,000. **Ex. A**, Settlement Agreement ¶ 3.1(B); Schaffer Decl. ¶ 42.

This award is reasonable given the significant contribution Plaintiff made to advance the prosecution and resolution of the lawsuit.  Moreover, the Class and Collective Notices informed

11

Class Members that Plaintiff would seek the above service award, and no Class Members objected to the award.  Schaffer Decl. ¶¶ 38-39; **Ex. C**, Rovertoni Decl., **Ex. 1** Class Notice at 2.

"Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny, and that '[service] awards are particularly appropriate in the employment context' where 'the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers.'" *Tiro*, 2013 WL 4830949, at *10-*11; *see also Hill*, 2021 WL 3778173, at *16 (citations omitted) (Approving $10,000 service awards to each class representative because it "is important to compensate plaintiffs for the time they spend and the risks they take"); *Sewell v. Bovis Lend Lease, Inc. et al.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at *14 (S.D.N.Y. April 16, 2012) ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer . . . [and] being blacklisted as 'problem' employees.").  Accordingly, "[s]ervice awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risk incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs."  *Anjost*, 2014 WL 321831, at *10 (citation and internal quotation marks omitted).

Here, the Named Plaintiff was instrumental to the initiation and prosecution of this action, and expended considerable time and effort to assist Class Counsel with this case. Schaffer Decl. ¶¶ 43-45.  Her services included, but were not limited to: informing counsel of the facts initially and as the case progressed, providing counsel with relevant documents in her possession, encouraging other individuals to participate in the action and settlement, assisting Class Counsel

in reviewing Defendant's document production, assisting counsel to prepare for two mediations and reviewing and commenting on the terms of the settlement. *Id.*

The Named Plaintiff also undertook a significant risk that she would be retaliated against and/or "black balled" in the industry for the sake of the Class, as her name and information in this lawsuit are readily available through simple internet and Google searches. *Id.* ¶ 44. In addition, the Named Plaintiff was identified in newspaper articles, including Law 360, and other publications, thereby increasing this risk. *Id.*

Accordingly, the Court should grant the requested service award based on the significant risk and work that Plaintiff undertook on behalf of the Class, as her actions exemplify the very reason service fees are awarded. *See Sykes v. Harris*, No. 09 Civ. 8486 (DC), 2016 WL 3030156, at *18-*19 (S.D.N.Y. May 24, 2016) (awarding $30,000 to each class representatives in part because "[i]ncentive awards are appropriate when considering the sacrifice of [p]laintiffs' anonymity"); *Sukhnandan*, 2014 WL 3778173, at *16 (approving service awards to four plaintiffs based on their time spent and risks taken in bringing, litigating and settling the lawsuit).

Moreover, the requested service award is reasonable and within the range awarded by other courts in this District in similar matters. *See e.g.*, *Matheson v. T-Bone Restaurant, LLC*, No. 09 Civ. 4214 (DAB), 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (granting a service award of $45,000 to the class representative); *McBean v. City of N Y.*, 228 F.R.D. 487, 494-95 (S.D.N.Y. 2005) (approving payments of $25,000 incentive awards to each named plaintiff); *Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18 Civ. 885, 2021 WL 3008480, at * 3 (S.D.N.Y. June 15, 2021) (approving service award of $20,000); *Duchene v. Michael Cetta, Inc.*, No. 06 Civ. 4576, 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009) (approving service payments of $25,000 and $10,000 in wage and hour action for named plaintiffs' efforts expended in furthering the interests of the

13

class); *see also*, *e.g.*, *Major Auto. Companies, Inc.*, No. 09 CV 5708 (CLP), 2016 WL 1745037, at * 8 (E.D.N.Y. Apr. 27, 2016) (awarding $20,000 service awards to 7 class representatives); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (finding service awards in wage and hour action of $30,000, $15,000, and $7,500 to be reasonable without noting any special circumstances);. Moreover, this service award represents only 2% of the total Settlement. *See, e.g., Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) (stating that service awards totaling 11% of the total recovery were reasonable "given the value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards"); *Reyes v. Altamarea Grp.*, No. 10-CV-6451 (RLE), 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving awards representing approximately 16.6% of the settlement); *Mentor v. Imperial Parking Systems, Inc.*, No. 05 Civ. 7993 (WHP), 2010 WL 5129068, at *1-2 (S.D.N.Y. Dec. 15, 2010) (approving service awards representing approximately 8.0% of the settlement fund to two named plaintiffs).

As such, Plaintiff respectfully asks the Court to grant the requested Service Award.

## IV.    CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED

Plaintiff's unopposed motion for Final Approval includes a request for attorneys' fees of one-third of the $1,200,000 Settlement Fund ($400,000) and reimbursement of litigation costs ($8,980.89). Schaffer Decl. ¶ 47. Settlement Agreement and Court-approved Class Notice provide that Class Counsel will apply to the Court for their fees and for litigation costs. *Id.* ¶ 48; **Ex. C**, Rovertoni Decl, **Ex. 1** Class Notice at 2. To date, no Class Members have objected to these requests. Schaffer Decl. ¶ 39; **Ex. C**, Rovertoni Decl. ¶ 12.

14

Although there are two ways to compensate attorneys for successful prosecution of statutory claims, in "cases of this nature, the 'trend' in this Circuit is to award fair and reasonable fees using the 'percentage of recovery method.'" *Kirby v. FIC Restaurants, Inc.* No. 19 Civ. 1306 (FJS/ML), 20200 WL 5791582, at *4 (N.D.N.Y. Sep. 28, 2020) (citing *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)); *see also Cruz*, 2019 WL 355334, at *7.

A.  **The Percentage Method Is The Preferred Method For Awarding Attorneys' Fees In Common Fund Cases In The Second Circuit.**

"In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award." *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 04494, 2015 WL 2255394, at *6 (S.D.N.Y. May 11, 2015); *see also Karic v. The Major Auto. Companies, Inc.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037, at *8 (Apr. 27, 2016); *Anjost*, 2014 WL 321831, at *8; *Sukhnandan*, 2014 WL 3778173, at *9.  "Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by 'private attorneys general,' attorneys who fill the private attorney general role must be adequately compensated for their efforts." *Anjost*, 2014 WL 321831, at *8 (citations omitted); *see also Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF)(DCF), 2013 WL 1209563, at *8 (S.D.N.Y. Mar. 21, 2013) ("Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.") (internal quotation marks omitted).  "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Anjost*, 2014 WL 321831, at *8 (citations omitted); *see Sand v. Greenberg*, No. 08 Civ. 7840 (PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

15

There are several reasons why courts prefer the percentage method over the lodestar method to compensate attorneys for successful prosecution of statutory claims.  First, the percentage method "directly aligns the interests of the class and its counsel [b]ecause it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made." *Kirby*, 2020 WL 5791582, at *4 (citing *Wal-Mart Stores*, 396 F.3d at 121.)

Second, the percentage method is closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *Id.* at *4 (internal quotation marks and citation omitted); *see also Sewell*, 2012 WL 1320124, at *10 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *In re Lawrence*, 24 N.Y. 3d 320, 341 (Oct. 28, 2014) (upholding 40 percent contingency fee and stating that, "[a]s a general rule, we enforce clear and complete documents, like the retainer agreement, according to their terms.") (citation omitted).

Third, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours.  It "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks and additional citation omitted); *see also Kirby*, 2020 WL 5791582, at *4.  In that regard, the percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method. *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under

the lodestar method."); *see also Hadel et al. v. Gaucho LLC et al.*, No. 15 Civ. 3706 (RLE), hr'g tr. at p. 9-10 (S.D.N.Y. June 30, 2016) (stating that "I think you should not take the opportunity to penalize people for being efficient."); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) (granting multiplier of 7.6 and stating that the class counsel should not be penalized "for achieving an early settlement"); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211(LTS) (HP), 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011) (noting that class counsel "ultimately negotiated an excellent settlement early in the litigation thus saving hundreds of hours of legal time that would have increased their fees").

Finally, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *17 (S.D.N.Y. Nov. 18, 2013) (quoting *Savoie*, 166 F.3d at 461 n.4). For these reasons, judges in the District Courts of New York have consistently awarded 1/3 of the fund. *See, e.g.*, *Manley v. Midan Rest. Inc.*, No. 14 Civ. 1693, 2017 WL 1155916, at *13 (S.D.N.Y. March. 27, 2017); *Illoldi,* 2016 WL 5900218, at *1 (awarding one-third of gross settlement fund); *Hadel*, 2016 WL 3647600, at *1 (awarding one-third of settlement fund); *Karic*, 2016 WL 1745037, at *8 ("Courts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund."); *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015).

Based on the above and the Class Notice that provided for an attorneys' fees and costs of 33.3%, Plaintiff respectfully submits that the Court should follow the trend in the Second Circuit and use the percentage of fund method in this common fund case. *See Kirby* 2020 WL 5791582, at *4; *Cruz*, 2019 WL 355334, at *7.

B. __The *Goldberger* Factors Support An Award Of One-Third Of The Common Fund.__

In determining the reasonableness of fee applications, courts consider the following six factors set forth by the Second Circuit in *Goldberger*: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. 209 F.3d at 50.  Here, all of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

C. __Class Counsel's Time And Labor.__

Class Counsel spent significant effort to achieve the total $1,200,000 settlement. Schaffer Decl. ¶ 56.  In performing these tasks, Class Counsel expended 233.45 hours, which are reasonable for a complex case like this one. *Id.* ¶¶ 56-57.[3]  Moreover, Class Counsel anticipates spending additional time in the future preparing for the Fairness Hearing and administering the settlement, and the requested fee award is also meant to compensate for that time.  *Id*. ¶ 61; *Karic*, 2016 WL 1745037, at *8 (fee award also compensates counsel for time required to administer the Settlement Fund in the future).

The rates used in calculating Class Counsel's lodestar are consistent with the rates approved for F&S in past years, and also less than rates more recently approved for other members of the plaintiff's bar.  *See Sukhnandan*, 2014 WL 3778173, at * 14-*15 (approving $425 per hour for partners Brian S. Schaffer and Joseph A. Fitapelli in 2014); *Anthony v. Franklin First Financial*, 844 F. Supp. 2d 504, 508 (S.D.N.Y. 2012) (approving $350 per hour for partners Brian

---

[3] Counsel maintained contemporaneous time records throughout the course of this investigation and litigation. Schaffer Decl. ¶ 56.  For the Court's convenience, Counsel submits a summary and their time records as **Ex. D.**

S. Schaffer and Joseph A. Fitapelli in 2012); *see also Raniere v. Citigroup, Inc.*, 310 F.R.D. 211, 221 (S.D.N.Y. 2015) (applying the plaintiffs' counsel's hourly rates of $650-950 per hour for partners, $350-600 per hour for associates, and $180 per hour for staff and paralegals for purposes of lodestar crosscheck); *Scott v. City of New York*, 643 F.3d 56, 59 (2d Cir. 2011) (holding rate of $550 per hour in FLSA case was reasonable). Class Counsel's qualifications include, among other things, speaking and presenting at many bar association and CLE events and being often quoted and interviewed by the press and leading employment law organizations. *See* Schaffer Decl. ¶¶ 50-51. Therefore, the hourly rates requested are reasonable.

### 1. The Litigation's Magnitude And Complexity

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50. "Courts have recognized that wage and hour cases involve complex legal issues." *Tiro*, 2013 WL 4830949, at * 13 (citation omitted); *see Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law."). Among FLSA cases, "cases like this one, which involve both an "opt out" class action pursuant to Fed. R. Civ. P. 23 and a FLSA "opt in" collective action, are particularly complex." *See, e.g., Solis v. Orthonet, LLC*, No. 19 Civ. 4678 (VSB), 2021 WL 2678651, at *3 (S.D.N.Y. June 30, 2021) (citation omitted) (awarding fees equal to one-third of the settlement fund in FLSA and NYLL class action as the issues are "complex and difficult to prove") This matter is significantly large and complex due to the several mixed questions of fact in law at hand. *See supra* Section I(B)(2)(d).

These complex and unresolved factual and legal questions demonstrate this is not a relatively straight forward wage and hour case, and supports approval of Class Counsels' attorneys' fees and costs request. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479 (2013);

*Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (mixed questions of fact and law supported court's award of attorneys' fees representing approximately 40% of the common fund); *Clark v. Ecolab Inc*., Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4-*8 (S.D.N.Y. May 11, 2010) (approving settlement and award of attorneys' fees representing one-third of the fund in complex wage and hour class and collective action).

### 2.  The Risks Of Litigation.

Class Counsel agreed to prosecute this action without any assurance of payment for their services; litigating this case on a wholly contingent basis in the face of significant risk. Schaffer Decl. ¶ 63.  The retainer agreement signed by the Named Plaintiff reflects the contingency fee arrangement.  *Id.*  Class Counsel entered into a contingency fee arrangement knowing that there was a very real possibility of an unsuccessful outcome and, thus, no fee of any kind.  *Id*. ¶¶ 63-68; *see Solis,* 2021 WL 2678651, at * 3 ("Due to the contingent nature of the customary fee arrangement, lawyers make a considerable investment of time and resources with the prospect of an unsuccessful outcome and no fee of any kind"); *Beckman*, 293 F.R.D. at 479 ("Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees.") (internal quotation and citation omitted); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 351 (S.D.N.Y. 2014) (quoting *Goldberger*, 209 F.3d at 55) ("risk should be considered 'as of when the case is filed.'"). F&S continues to represent employees on a wholly contingent basis despite, unfortunately, having suffered several major (and very expensive) losses in wage and hour cases over the years. Schaffer Decl. ¶¶ 63-68.

Class Counsel stood to gain nothing in the event the case was unsuccessful. *Id*.  Class Counsel takes on difficult cases like this one because we believe that they are important as many individual workers may be unwilling or unable to front the costs of litigation for an outcome that

is uncertain. *Id*. ¶ 68. As Judge Engelmayer has recognized, counsel "retained its obligations to pay salaries and overhead, and assuredly forewent other potential clients and cases. A law firm is a business, too." *Hart v. RCI Hospitality Holdings, Inc.*, No. 09 Civ. 03043 (PAE), 2015 WL 5577713, at *16 (S.D.N.Y. Sept. 22, 2015). The court granted class counsel's "substantial fee award" to "recognize the outsize risks that [class counsel] took in investing in [that] uncertain lawsuit." *Id.* The reality of operating a fully contingency-based business was considered by Judge Caproni in a past approval hearing, in which she explained "the life of a contingency lawyer. Sometimes you're on the high side; sometimes you're on the low side." **Ex. E**, *Illoldi et al. v. Koi Group Inc. et al.*, No. 15 Civ. 6838 (VEC), hr'g tr. at pg. 9-12 (S.D.N.Y. Oct. 7, 2016) (granting F&S 1/3 of settlement fund and approving 3.1 multiplier).

Thus, Class Counsel's attorneys' fee request is supported by this factor as well. *See, e.g., Cruz*, 2019 WL 355334, at *7 (approving request for attorneys' fees in wage and hour class action where continued litigation involved similar risks).

### 3.  Quality Of The Representation.

"Quality of representation is best measured by results." *Solis*, 2021 WL 2678651, at *3 (citation omitted). Here, the recovery obtained - $1,200,000 - is substantial in light of the risks of litigation. Furthermore, "[c]ourts have found [Class Counsel] to be 'experienced and well-qualified employment lawyers and class action lawyers and have particular expertise in prosecuting and settling wage and hour class actions.'" *Carpenter*, 2015 U.S. Dist. LEXIS 82771, at *1 (S.D.N.Y. June 2, 2015) (finding that F&S "meets the adequacy requirement" and certifying them as class counsel); Schaffer Decl. ¶ 50; *see also*; *Kirby*, 2020 WL 3501398, at *4; *Zorilla v. Carlson's Restauarnts, Inc.*, No. 14 Civ. 2740 (AT), 2017 WL 5004848, at *3 (S.D.N.Y. Oct. 26, 2017); *Almonte v. Marina Ice Cream Corp.,* No. 16 Civ. 660 (GBD), 2016 WL 7217258, at *4 (S.D.N.Y. Dec. 8, 2016)

("F&S is comprised of experienced employment attorneys with a very good reputation among the employment law bar and have years of litigation experience in wage and hour matters in state and federal courts").

### 4. The Fee Is Reasonable In Relation To The Settlement.

Class Counsel's request for one-third of the fund "is reasonable and consistent with the norms of class litigation in this circuit." *Sukhnandan*, 2014 WL 3778173, at *13 (citation and internal quotation marks omitted).  Courts in this Circuit have routinely approved requests for one-third of the fund in cases with settlement funds similar or substantially larger than the present action.  *See, e.g.*, *Puglisi*, 2015 WL 4608655, at *1 (approving 1/3 of $9,900,000); *Karic*, 2016 WL 1745037, at *8 (approving F&S's request for 1/3 of $5,500,000 and noting that "[c]ourts in this Circuit often approved requests for attorneys' fees amounting to 33.3% of a settlement fund"); *Hadel*, 2016 WL 3647600, at *1 (approving 1/3 of $2,375,000); *Illoldi*, 2016 WL 5900218, at *1 (approving F&S's request of one-third of $800,000 settlement fund); *Carpenter*, 2015 U.S. Dist. LEXIS 82771, at *1 (approving F&S's request of one-third of settlement fund).

Therefore, this factor weighs in favor of granting the requested fees.

### 5. Public Policy Considerations.

Public policy considerations weigh in favor of granting Class Counsel's requested fees.  In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393, 399 (1999).  "Counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.  While court awarded fees must be reasonable, setting fees too low or randomly will create poor incentives

to bringing large class action cases." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 352 (internal quotation marks and citations omitted). "The willingness of experienced counsel to take on private lawsuits helps further the goal of the FLSA and NYLL to protect the wages of workers. Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of these statutes. *Solis*, 2021 WL 2678651, at * 4.

The FLSA and the NYLL are remedial statutes designed to protect the wages of workers. *See* **Ex. F**, *Amador v. Morgan Stanley & Co., LLC*, No. 11 Civ. 4326, hr'g tr. at p. 16 (S.D.N.Y. Dec. 19, 2014) (recognizing that "one-third is not too high for [wage and hour] cases like this . . . It's important that lawyers have incentives to bring cases like this"). Here, Class Counsel successfully negotiated a settlement that obtained significant monetary compensation for Class Members. Thus, this factor weighs in favor of Class Counsel.

### D.  The Lodestar Cross Check Further Supports An Award To Class Counsel Of One-Third Of The Settlement Fund.

"Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a 'baseline' or as a 'cross check.'" *Tiro*, 2013 WL 4830949, at *15 (citation omitted). While courts may still use the lodestar method as a "cross check" when applying the percentage of the fund method, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Solis*, 2021 WL 2678651, at *4; *see also; Goldberger*, 209 F.3d at 50.

Applying a lodestar analysis here would penalize Class Counsel for acting responsibly on behalf of the Class and obtaining a favorable outcome relatively early. In *Beckman*, the court noted that a relatively low lodestar amount (the fee award was about 6.3 times the lodestar) "should not result in penalizing plaintiffs' counsel for achieving an early settlement, particular[ly] where, as here, the settlement amount is substantial." 293 F.R.D. at 482. This sentiment was echoed by

Judge Ellis, when considering a substantial settlement where the fee award was about 5 times the lodestar:

> "[T]he proportion of the lodestar is probably higher if you're able to effectuate a settlement earlier and certainly that's to be encouraged, you could have litigated longer and [t]he proportion would have been less but that would not be a good result for either the plaintiffs, the defendants, either counsel or the class members.  So I think you should not take the opportunity to penalize people for being efficient."

**Ex. G,** *Hadel et al. v. Gaucho LLC et al*., No. 15 Civ. 3706 (RLE), hr'g tr. at p. 9-10 (S.D.N.Y. June 30, 2016) (awarding F&S 1/3 of $2,375,000 settlement).

Courts then consider whether a multiplier is warranted based on factors such as: "(i) the contingent nature of the expected compensation for services rendered; (ii) the consequent risk of non-payment viewed as of the time of filing the suit; (iii) the quality of representation; and (iv) the results achieved." *Parker v. Jekyll & Hyde Entm't Holdings,* LLC, No. 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010).  As Judge Engelmayer has previously noted, "courts have awarded fees in class action suits that exceeded by many multiples the total that would have been awarded based on actual hours expended."  Romero, 58 F. Supp. 3d at 423 (*citing Viafara v. MCIZ Corp.*, No. 12 Civ. 7452 (RLE), 2014 WL 1777438, at *14 (S.D.N.Y. May 1, 2014)).  All of these factors weigh in favor of granting Class Counsel's fee request.

With respect to the first two factors, Class Counsel spent approximately 233.45 hours litigating and settling this matter.  Schaffer Decl. ¶ 56.  The hours worked by Class Counsel result in a lodestar of approximately $115,186.25. Moreover, "[b]ecause class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Beckman*, 293 F.R.D. at 482.

Class Counsel's request for one-third of the Fund (approximately 3.47 times their "lodestar") is reasonable in light of the excellent result achieved for the Class and well within the multiplier range awarded by courts in the Second Circuit and this District.  Other courts have approved similar multipliers.  *See, e.g.*, *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) (granting multiplier of 7.6 and stating that the class counsel should not be penalized "for achieving an early settlement"); *Hanifin v. Accurate Inventory & Calculating Serv., Inc.*, No. 11 CIV. 1510, 2014 WL 4352060, *9 (N.D.N.Y. Aug. 20, 2014) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520 (JLC), 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting 6.8 multiplier); *Beckman*, 293 F.R.D. at 483 (granting 6.3 multiplier); *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (multiplier of 5.1 "falls within the range granted by courts"); *Hadel*, 2016 WL 3647600, at *1 (granting multiplier of 5); *Puglisi*, 2015 WL 4608655, at *1 (awarding multiplier of 4.8); *Flynn v. N.Y. Dolls Gentlemen's Club*, No. 13 Civ. 6530 (PKC) (RLE), 2015 WL 3916161, at * 1 (S.D.N.Y. April 28, 2015) (granting multiplier of 4.5 in a claims made settlement).

### E.  Class Counsel Is Entitled To Reimbursement Of Their Litigation Expenses.

Pursuant to the Class Notices, Class Counsel seeks reimbursement of $8,980.89 in necessary litigation costs and expenses as part of its overall request for one-third of the Settlement Fund.  Schaffer Decl. ¶¶ 69.  "Courts typically allow counsel to recover their reasonable out-of-pocket expenses." *Sukhnandan*, 2014 WL 3778173, at *15.  Given that Class Counsel's unreimbursed expenses were incidental and necessary, they should be approved as part of Class Counsel's request for one-third of the Settlement Fund.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant final certification of the Rule 23 Classes, and approve the Class and FLSA Settlement, the service award, attorneys' fees and costs, and enter the proposed Final Order.


Dated: New York, New York
      October 8, 2021                        Respectfully submitted,

                                              */s/ Brian S. Schaffer*
                                              Brian S. Schaffer

                                              **FITAPELLI & SCHAFFER, LLP**
                                              Brian S. Schaffer
                                              Dana M. Cimera
                                              28 Liberty Street, 30th Floor
                                              New York, New York 10005
                                              Telephone: (212) 300-0375

                                              *Attorneys for Plaintiff and*
                                              *the Class*